NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

CATHERINE O'BOYLE, et al.,    :
           :   Hon. Joseph H. Rodriguez
     Plaintiffs,    :
           :   Civil Action No. 08-553
     v.        :
           :   Opinion & Order
DAVID L. BRAVERMAN, et al.,   :
           :
     Defendants.    :
_____:

     This is a legal malpractice action relating to litigation gone awry in Tennessee. The plaintiffs, Catherine O'Boyle ("Catherine") and Martin O'Boyle ("Martin"),[1] originally filed this action in New Jersey Superior Court on December 14, 2007.  One of the defendants, David L. Braverman ("Braverman"), removed the case to this Court on January 31, 2008, asserting federal jurisdiction based on diversity of citizenship.  In so doing, however, Braverman failed to allege the citizenship of each member of a limited liability company which, according to the case caption, is the predecessor in interest to another defendant.  Braverman now moves to amend the Notice of Removal to correct this error.  He likewise moves to dismiss this case for a variety of reasons, including that it is untimely and that the Complaint fails to state a claim for relief.

     Plaintiffs submitted no opposition to Braverman's motion to amend.  (See Docket Entry No. 17.)  Nonetheless, subsequent to Braverman's filing of that motion, Plaintiffs

_____

    [1]The O'Boyles will often be referred to collectively as "Plaintiffs."

moved to remand this action to the state court based on Braverman's failure to allege the citizenship of the limited liability company's members.  Plaintiffs have filed opposition to Braverman's motion to dismiss.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard on Braverman's motion to amend or Plaintiffs' motion to remand.  However, oral argument was entertained on the motion to dismiss.  For the following reasons, Braverman's motions are granted, while Plaintiffs' motion to remand is denied.

## I.  BACKGROUND

Plaintiffs, who are mother and son, were general partners in a Tennessee partnership called New Midland Plaza Associates ("New Midland").  They were also partners in two Florida partnerships called Commerce Partnership No. 1147 and Commerce Partnership No. 1171, both of which had ownership interests in New Midland.[2]

---

[2]In 1999, New Midland filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida.  (See Braverman's Br. Supporting Dismissal, Exh. B, p. 3.)  In an opinion confirming New Midland's reorganization plan, the bankruptcy court noted the ownership structure of New Midland:

> [Martin] O'Boyle, the managing general partner, owns 69.13% of the partnership interest in his individual capacity.  . . .  The remaining partnership interests are owned by Catherine O'Boyle, [Martin's] mother, who owns 0.10%; Commerce Partnership 1147, which owns 26.92%; and Commerce Partnership 1171, which owns 3.85%.  [Martin] in turn owns 99.9% of the partnership interest of Commerce Partnership 1147 and Commerce Partnership 1171, with Catherine O'Boyle owning the remaining 0.10%.

In re New Midland Plaza Assocs., 247 B.R. 877, 881, 2000 Bankr. LEXIS 449 (Bankr. S.D. Fla.

According to the Complaint,[3] Plaintiffs retained Braverman and his law firm at the time, Fellheimer, Braverman & Kaskey, P.C., in October 1998.  (Compl. 1/1.)  Plaintiffs hired Braverman to represent New Midland in a dispute it had with a mortgage lender, First Union National Bank ("First Union").  (Id.)  Specifically,

> Plaintiffs sought the legal representation and expertise of defendants for the purpose of filing a lawsuit against First Union National Bank and other defendants in the Circuit Court of Blount County, Tennessee, for a pattern and practice of wrongful conduct by First Union, in part, the misappropriation of more than $680,000 of New Midland Funds, as well as for breach of contract, declaratory and injunctive relief.

(Id.)

Braverman evidently filed Plaintiffs' suit against First Union in the Tennessee court in April 1999.[4]  (Id. 1/5.)  Plaintiffs claim, however, that Braverman failed to use due care in the prosecution of the case.  (Id. 1/6.)  Braverman's alleged malpractice caused Plaintiffs damage insomuch as the Tennessee Litigation was dismissed and, for unspecified reasons, sanctions were imposed upon Plaintiffs.  (Id.)

Plaintiffs are now suing to recover their losses associated with the alleged malpractice.  The Complaint names several Defendants: 1) Braverman; 2) the law firm of

---

2000).  Thus, Martin owned, directly or indirectly, a 99.87% interest in New Midland while Catherine possessed a 0.13% stake in the company.

[3]Citations to the Complaint will take the form of "Compl. X/Y," with "X" representing the Count and "Y" representing the paragraph within that Count.

[4]For the sake of clarity, Plaintiffs' underlying action against First Union will hereinafter be referred to as the "Tennessee Litigation."

Braverman & Kaskey, P.C. ("B&K") (improperly pled as Braverman & Kaskey, Ltd.),[5] which, according to the case caption, was formerly known as Braverman, Daniels, Kaskey, Ltd. ("BDK")[6]; 3) the law firm of Fellheimer, Braverman & Kaskey, P.C. ("FB&K")[7]; and 4) several fictitiously named attorneys who worked on the Tennessee Litigation, and business entities that employed or were owned by Braverman during that period.  Plaintiffs seeks various damages, including punitive damages, as well as attorneys' fees.

Braverman, the only defendant who was served with process to date, removed this action to this Court on January 31, 2008.  Federal jurisdiction is premised on diversity of citizenship.  As discussed below, however, his Notice of Removal improperly pleaded the citizenship BDK.  He now moves to amend his Notice of Removal, while Plaintiffs cross-move to remand this case based on that pleading error.  Additionally, Braverman moves to dismiss this action for a variety of reasons, including that it is time-barred, that Plaintiffs failed to join necessary and indispensable parties, and that the Complaint fails to state a claim, both as to the cause of action and as to its demand for punitive damages and

---

[5]B&K is Braverman's current law firm.  (See Braverman's Br. Opposing Remand, p. 7 n.6.)

[6]Braverman disputes that B&K was ever known as Braverman, Daniels, Kaskey, Ltd. (Braverman's Br. Opposing Remand, p. 6.)  He notes in fact that Braverman, Daniels, Kaskey, Ltd. still exists and is still known by that name.  (Id.)

[7]According to the Notice of Removal, FB&K remains in existence but is now known as Braverman, Kaskey & Capara ("BK&C").  (Notice of Removal ¶ 18.)

attorneys' fees.

## II.  DISCUSSION

### A.  Motions Related to Braverman's Removal of this Case

Because removal of this case is premised on diversity jurisdiction, the Notice of Removal contains several allegations pertaining to the parties' citizenship.  It avers that Catherine and Martin are citizens of New Jersey and Florida, respectively,[8] while Braverman and the relevant business entities with which he is associated are citizens of Pennsylvania.[9]  (Id. ¶¶ 9-10,  12, 14-15, 18.)  Specifically, B&K and BK&C are both Pennsylvania corporations, and have principal places of business in Pennsylvania.  (Id. ¶¶ 14, 18.)  BDK is a limited liability company.  (Id. ¶ 15.)  But its citizenship was pleaded as if it was a corporation.  In other words, the Notice of Removal states it is organized under Pennsylvania law and has a principal place of business in Pennsylvania.  (Id.)  Recognizing this problem, Braverman moves to amend the Notice of Removal to properly allege the basis for BDK's citizenship, namely by pleading the citizenship of each of

---

[8]Plaintiffs "acknowledge . . . that they are citizens of the State of New Jersey."  (Pl. Br. Supporting Remand, p. 1.)  However, this is inaccurate with respect to Martin; while he "maintains a residence in Longport, Atlantic County, New Jersey," (id.,) public records indicate that he is a citizen of Florida.  He claims a homestead exemption for his home in Delray Beach, Florida.  (See Braverman's Br. Supporting Dismissal, Exh. C.)  He is registered to vote in Florida.  (See id., Exh. D.)  And he carries a Florida driver's license.  (See id., Exh. E.)  Under these circumstances, Martin is a Florida, not New Jersey, citizen.  See Edick v. Poznanski, 6 F. Supp. 2d 666, 669-70 (W.D. Mich. 1998) (holding that a person who maintained homes in Michigan and Illinois was a Michigan citizen because she claimed a homestead exemption on her Michigan home, voted in Michigan, carried a Michigan driver's license, and registered and insured her car in Michigan).

[9]The relevant business entities are B&K, BDK, and BK&C.

5

BDK's members.  See Hessert Constr. N.J., LLC v. Garrison Architects, PC, Civil Action No.

06-5696, 2007 U.S. Dist. LEXIS 50997, at *7-8 (D.N.J. July 13, 2007) ("[T]he citizenship of a

limited liability company is determined by the citizenship of its members.").

Plaintiffs filed no opposition to Braverman's motion to amend.  (See Docket Entry

No. 17.)  Instead, after Braverman had already filed his motion to amend, they filed a

motion to remand based entirely on the failure to plead the citizenship of BDK's

members.  As discussed below, Braverman's error in pleading BDK's citizenship is minor

and permitting amendment will not prejudice Plaintiffs.  Thus, Braverman's motion is

granted, and Plaintiffs' motion is denied.

Under Federal Rule 15(a)(2), courts "should freely give leave to amend when

justice so requires."  The United States Supreme Court has explained this standard:

> In the absence of any apparent or declared reason–such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failures to cure deficiencies by amendments previously
> allowed, undue prejudice to the other party by virtue of
> allowance of the amendment, futility of amendment, etc.–the
> leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962).

Additionally, under 28 U.S.C. § 1653, "[d]efective allegations of jurisdiction may

be amended, upon terms, in the trial or appellate courts."  This provision "addresses only

incorrect statements about jurisdiction that actually exists, and not defects in the

jurisdictional facts themselves."  Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826,

831 (1989).  Moreover, "'[a]n imperfect or defective allegation is distinguished from a

6

missing allegation, which may not be added by amendment after the 30-day period [for removal under 28 U.S.C. § 1446] has expired.'"  Gilberg v. Stepan Co., 24 F. Supp. 2d 325, 347 (D.N.J. 1998) (quoting Am. Educators Fin. Corp. v. Bennett, 928 F. Supp. 1113, 1115 (M.D. Ala. 1996)) (second alteration in original).

Courts have permitted parties to amend their notices of removal under circumstances remarkably similar to those in the present case.  In Muhlenbeck v. Ki, LLC, 304 F. Supp. 2d 797 (E.D. Va. 2004), for example, the defendant alleged in its notice of removal that it was an Alaskan limited liability company with a principal place of business in Colorado.  Id. at 798.  The plaintiff moved to remand the case because the defendant improperly pleaded the basis for a limited liability company's citizenship.  Id. The defendant responded by moving to amend the notice of removal to supply allegations of the citizenship of its members.  Id. at 798-99.  The court determined that amendment was appropriate because the defendant "alleged all of the grounds necessary for removal in its original removal petition, but it imperfectly alleged its own citizenship."  Id. at 801. Moreover, correction of that defect required "only a technical amendment."  Id. at 802. Thus, the court granted the defendant's motion to amend, and denied the plaintiff's motion to remand.  Id.

This case is very similar to Muhlenbeck, the reasoning of which this Court finds persuasive.  Here, as there, the Notice of Removal asserted diversity jurisdiction, but imperfectly alleged the citizenship of a limited liability company by treating it like a

corporation for diversity purposes.  This defect is merely technical–the proposed amended Notice of Removal states that BDK's three members are all citizens of Pennsylvania, making BDK a citizen of that state.  (Prop. Am. Notice of Removal ¶ 15.)  This is completely consistent with the original Notice of Removal's allegation that BDK is a citizen of Pennsylvania.  (Notice of Removal ¶15.)  There is no indication that permitting the amendment will prejudice Plaintiffs, especially since they submitted no opposition to Braverman's motion to amend.  Accordingly, his motion is granted and Plaintiffs' motion to remand is denied.

### B.  Braverman's Motion to Dismiss

Braverman moves to dismiss this action on several bases.  First, he argues that it is time-barred by the applicable statute of limitations.  Second, he contends that the Complaint fails to state a claim upon which relief can be granted, both as to Plaintiffs' legal malpractice cause of action and their demand for punitive damages and attorneys' fees.  Third, he asserts that this action should be dismissed under Federal Rules 12(b)(7) and 19 for failure to join necessary and indispensable parties, namely other attorneys involved in the Tennessee Litigation.  As discussed below, the Court agrees that this case is untimely and, in any event, that the Complaint does not sufficiently plead a legal malpractice claim.  Braverman's other arguments–regarding punitive damages, attorneys' fees, and joinder–will not be addressed.

8

### 1.  Standard on a Motion to Dismiss for Failure to State a Claim

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)."  Id. at 1965 (internal citations omitted).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.  Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  Moreover, these allegations and inferences must be viewed in the light most favorable to the plaintiff.  Id.  However, a court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey,

481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005)) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

## 2. *Analysis of Braverman's Motion to Dismiss*

### a. This action is governed and time-barred by Tennessee law.

Braverman contends that this action should be dismissed because it is time-barred under Tennessee law. Plaintiffs primarily argue that New Jersey law, under which this suit is timely, governs.[10] Resolving this dispute requires a choice of law analysis. Before turning to that analysis, however, the Court must respond to three intertwined threshold arguments raised by Plaintiffs: 1) Braverman's limitations defense is prematurely raised;

---

[10]As discussed in part II.B.2.a.i.a, *infra*, Plaintiffs additionally asserted at oral argument that this action would be timely even if Tennessee law applied.

2) Braverman's attachment of several extrinsic documents to his motion to dismiss converts it into a motion for summary judgment; and 3) Plaintiffs require additional discovery in order to oppose Braverman's motion.

At oral argument, Plaintiffs suggested that the Court could not consider Braverman's limitations defense in the context of his motion to dismiss for failure to state a claim.  The Court disagrees.  Although a statute of limitations defense is typically raised in the defendant's answer, the so-called "Third Circuit Rule" permits such a defense to be raised in a Rule 12(b)(6) motion if "'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  "'If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).'"  Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)).  But courts are permitted to examine public records, including those concerning judicial proceedings, when considering a motion to dismiss for failure to state a claim.  See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  This is true even if the motion to dismiss is premised on a statute of limitations argument.  See Caleb v. CRST, Inc., 43 Fed. Appx. 513, 515 (3d Cir. 2002).  As discussed below, the Complaint itself and several public records related to the Tennessee Litigation reveal that this action is untimely.  Accordingly, Braverman's

11

limitations defense is properly before the Court.

Relatedly, there is no merit to Plaintiffs' assertion that this motion should be converted into one for summary judgment. The various exhibits attached to Braverman's motion are mostly public records related to the Tennessee Litigation. A court may consider such documents without converting a pending motion to dismiss into a motion for summary judgment. See Lum, 361 F.3d at 222 n.3; S. Cross Overseas Agencies, 181 F.3d at 426; see also Golden v. Cook, 293 F. Supp. 2d 546, 551 (W.D. Pa. 2003) ("[I]t is well established that courts are permitted to consider [in a Rule 12(b)(6) motion] matters of which they may take judicial notice, including . . . publicly available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'" (citations omitted)). In addition, Braverman attached to his motion a copy of the retainer agreement into which he and Plaintiffs entered. This document is not a public record, but it does not automatically follow that conversion is required. Any document can be considered in the context of a Rule 12(b)(6) motion if it "form[s] the basis of a claim." Lum, 361 F.3d at 222 n.3. A document is said to form the basis of a claim if it is "'integral to or explicitly relied upon in the complaint.'" Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426). Here, the Complaint specifically references the retainer agreement, thereby making the document's consideration appropriate in the Rule 12(b)(6) context.[11]  (See Compl. 2/1.)  Thus, this

---

[11]It should be noted that Braverman attached the retainer agreement to his motion to support his argument that a demand for attorneys' fees is impermissible in a legal malpractice

motion to dismiss will not be converted into a motion for summary judgment.

Finally, even if this was a motion for summary judgment, Plaintiffs' request for additional discovery would be denied. Rule 56 permits "[a] party against whom relief is sought [to] move at any time . . . for summary judgment . . . ." FED. R. CIV. P. 56(b). If the non-movant requires additional discovery in order to oppose the motion, it must follow the procedure outlined in Rule 56(f). Specifically, it must submit an affidavit specifying the reasons "it cannot present facts essential to justify its opposition . . . ." FED R. CIV. P. 56(f). To warrant additional discovery, however, the affidavit "must move beyond mere generalities and specify what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." Scott v. Graphic Communs. Int'l Union, Local 97-B, 92 Fed. Appx. 896, 900 (3d Cir. 2004). If a party fails to submit an affidavit, a court may deny its request for additional discovery for failure to comply with Rule 56(f). See, e.g., Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989).

Here, Plaintiffs have not filed any affidavit in support of their request for additional discovery. This failure alone would justify the Court's denial of their request. Moreover, Plaintiffs only generalize as to the information they seek, stating their desire to "flesh[] out" their allegations that Braverman was negligent. (Pl. Br. Opposing Dismissal, p. 6.) This does nothing to explain how summary judgment would be

---

case. The Court does not address this argument in this Opinion and, by extension, has no reason to actually examine the retainer agreement.

precluded where the principal argument in favor of dismissal relates to the untimeliness of the action.  Therefore, it is appropriate to now consider Braverman's limitations defense and the choice of law question it raises.

In a diversity case, such as this one, federal courts "determine which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits." Garcia v. Plaza Oldsmobile Ltd., 421 F.3d 216, 219 (3d Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  New Jersey's choice of law regimen therefore guides this analysis.  New Jersey uses a flexible governmental interest analysis "which requires application of the law of the state with the greatest interest in resolving the particular issue . . . ." Gantes v. Kason Corp.,679 A.2d 106, 109 (N.J. 1996).

Until 1973, New Jersey applied the forum's statute of limitations irrespective of which state's substantive law governed the case.  See Schum v. Bailey, 578 F.2d 493, 495 (3d Cir. 1978).  In 1973, however, the New Jersey Supreme Court determined that New Jersey courts would borrow foreign statutes of limitations under narrowly defined circumstances:

> When the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and [if] its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence we will "borrow" the limitation law of the foreign state.

Heavner v. Uniroyal, Inc., 305 A.2d 412, 418 (N.J. 1973).  This does not mean New

Jersey courts will always borrow the limitations period of the foreign jurisdiction.  See

Henry v. Richardson-Merrell, Inc., 508 F.2d 28, 32 n.9 (3d Cir. 1978) ("[Heavner]

eschews all mechanistic rules.").  Rather, the Heavner rule "provides a limited and special

exception to the general rule that the rule of the forum determines the applicable period of

limitations."  O'Keeffe v. Snyder, 416 A.2d 862, 868 (N.J. 1980).

   According to the Third Circuit, the Heavner rule requires federal courts sitting in

diversity in New Jersey to apply the statute of limitations of the state whose substantive

law governs.[12]  See Warriner v. Stanton (Warriner II), 475 F.3d 497, 500 n.2 (3d Cir.

2007) ("New Jersey 'borrows' the statute of limitations of the state whose substantive law

applies to the case."); Schum, 578 F.2d at 495 ("We glean from Heavner that the critical

determination underlying the 'borrowing' of a foreign statute of limitations is a

determination as to whether a foreign substantive law is to be applied."); Henry, 508 F.2d

at 37 ("Absent a finding that New Jersey substantive law applies, Heavner requires

borrowing of the foreign limitations period.").  For this reason, the courts have held that

---

[12]Braverman suggests there is a *per se* rule in New Jersey that, in legal malpractice cases, the substantive law to be applied is the law that would have governed the underlying action.  He cites to the New Jersey Appellate Division's decision in Boyson, Inc. v. Archer & Greiner, P.C., 705 A.2d 1252 (NJ. Super. Ct. App. Div. 1998), for support, but his reliance is misplaced.  The Boyson court did not announce a *per se* rule for all malpractice cases; it merely held that that particular malpractice case should be governed by Pennsylvania law, the law that would have governed the underlying action.  See id. at 1257.  It reached this conclusion only after discussing New Jersey's governmental interest test, see id. at 1256, and noting the significant contacts the case and the parties had with Pennsylvania, see id. at 1257.

Heavner extended the governmental interest analysis, previously reserved for choice of substantive law, to conflicts related to the applicable limitations period.  See Schum, 578 F.2d at 495; Henry, 508 F.2d at 32; Gantes, 679 A.2d at 109.

### i.  New Jersey's Governmental Interest Analysis

New Jersey's governmental interest test necessitates a two-prong approach.  First, the Court must determine whether there is an actual conflict between the law of the states involved.  Warriner II, 475 F.3d at 501; Fu v. Fu, 733 A.2d 1133, 1138 (N.J. 1999).  Second, assuming there is an actual conflict, the Court must "determine which state has the most significant relationship to the occurrence and the parties with respect to" the legal issue in question.  Fu, 733 A.2d at 1138.  Each prong of the analysis will be discussed in turn below.

### a.  There is an actual conflict between Tennessee and New Jersey's statutes of limitations.

As noted, the first step in the analysis is to determine whether there is an actual conflict present.  Warriner II, 475 F.3d at 501.  This is important "because 'where the application of either state's law would yield the same result, no conflict exists to be resolved.'"  Id. (quoting High v. Balun, 943 F.2d 323, 325 (3d Cir. 1991)).  In the absence of an actual conflict, New Jersey courts, including federal courts sitting therein, apply New Jersey law.  Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006).

New Jersey's statute of limitations for legal malpractice actions is six years from the date on which the action accrued.  N.J. STAT. ANN. § 2A:14-1; see Vastano v. Algeier,

16

837 A.2d 1081, 1084 (N.J. 2003).  In Tennessee, the statute of limitations for such cases is one year.  See TENN. CODE ANN. § 28-3-104(a)(2).  Under both states' law, a legal malpractice action accrues when the plaintiff 1) suffers an actual injury and 2) discovers, or should discover through reasonable efforts, that the defendant-attorney's conduct caused this injury.  Vastano, 837 A.2d at 1084-85; John Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 532 (Tenn. 1998).

Braverman argues that Plaintiffs' legal malpractice claim accrued no later than November 2006.  Plaintiffs did not contest this in their opposition brief.  At oral argument, however, they asserted that this suit really accrued in January 2007.  Under Braverman's view, there would be an actual conflict because Tennessee's shorter limitations period would have expired before December 14, 2007–the date on which this action was filed.  If, on the other hand, Plaintiffs' assertion is correct, this suit would be timely even if Tennessee law applied.  In other words, there would not be an actual conflict under Plaintiffs' approach, and the Court would simply apply New Jersey law.

The only injuries alleged in the Complaint are the dismissal of the Tennessee Litigation and the imposition of sanctions against Plaintiffs.  (Compl. 1/6.)  According to public records related to the Tennessee Litigation, these sanctions were first imposed on September 27, 2005.  (Braverman's Br. Supporting Dismissal, Exh. F., p. 70; see id., Exh. G.)  The state court filed its final decree dismissing the Tennessee Litigation on December 14, 2005.  (Id., Exh. F., p. 73.)  Then, on November 2, 2006, additional

sanctions were imposed.  (Id., Exh. F., p. 86; see id., Exh. H.)  According to Braverman, this action therefore could not have accrued later than November 2006.

Plaintiffs counter that the statute of limitations was tolled until after all appeals had been exhausted because only at that point would they know whether they were truly injured by Braverman's conduct.  By Plaintiffs' calculation, the case did not actually accrue until January 29, 2007–the date of the last docket entry relating to the Tennessee Litigation, after all appeals had ended.

Plaintiffs' argument, though clever, is completely inconsistent with Tennessee law. The Tennessee Supreme Court has rejected the idea that the statute of limitations for legal malpractice should be tolled pending the appeal of a client's underlying suit.  See Carvell v. Bottoms, 900 S.W.2d 23, 29 (Tenn. 1995).  Braverman's position is therefore correct. Plaintiffs' injuries were suffered, at the latest, on November 2, 2006.  Presumably, Plaintiffs would have had knowledge of these injuries, and their relationship to Braverman's conduct, immediately or shortly thereafter.  See Humphreys v. Argabrite, 162 Fed. Appx. 544, 546 (6th Cir. 2006) (applying Tennessee law and holding that a plaintiff's legal malpractice claim against the lawyer who represented her in a divorce proceeding accrued on the date the divorce decree was entered "because she knew or should have known of her injury at that point").  Thus, this action accrued no later than November 2006.  An actual conflict exists because the December 14, 2007 Complaint would be timely under New Jersey law, but not under Tennessee law.

18

      b.  The contacts and policies at issue reveal that Tennessee has
the greatest interest in applying its statute of limitations to this case.

Because an actual conflict exists, the Court must move on to the second prong of

the governmental interest analysis.  This prong requires courts to "determine which state

has the most significant relationship to the occurrence and the parties with respect to" the

legal issue in question.  Fu, 733 A.2d at 1138.  This in turn requires courts to "'identify

the governmental policies underlying the law of each state and how those policies are

affected by each state's contacts to the litigation and to the parties.'"  Warriner II, 475

F.3d at 501 (quoting Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986)).

*1.  Relevant Policies*

     The starting point for the second prong of New Jersey's governmental interest

analysis is to identify the relevant policies evidenced by the laws of each state.  Henry,

508 F.2d at 32; see Warriner II, 475 F.3d at 501.  In both New Jersey and Tennessee,

legal malpractice actions sound primarily in tort.  See Grunwald v. Bronkesh, 621 A.2d

459, 492 (N.J. 1993) ("A legal-malpractice action derives from the tort of negligence.");

Gibson v. Trant, 58 S.W.3d 103, 108 (Tenn. 2001) (referring to the "tort of legal

malpractice").  The Third Circuit has "'identified New Jersey's policies in a tort context

as consisting primarily of compensation and deterrence.'"  Warriner II, 475 F.3d at 501

(quoting Schum, 578 F.2d at 496).  Presumably, Tennessee's tort law also evinces the

dual policies of compensation and deterrence "'[b]ecause every tort rule, to some extent,

is designed both to deter and to compensate.'"  Id. (quoting Fu, 733 A.2d at 1141).

These policies of compensation and deterrence do not exist in a vacuum; they must be balanced against the need for eventual repose.  According to the New Jersey Supreme Court, the purposes underlying statutes of limitations are two-fold:

> (1) to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims, and (2) "to penalize dilatoriness and serve as a measure of repose."

Rivera v. Prudential Property & Casualty Ins. Co., 514 A.2d 1296, 1300 (N.J. 1986) (citations omitted); see also Gantes, 679 A.2d at 110 ("The purpose underlying any statute of limitations is 'to "stimulate to activity and punish negligence" and "promote repose by giving security and stability to human affairs."'") (citations omitted).  Tennessee's statute of limitations is based on similar policy concerns.  See, e.g., Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 820 (Tenn. 1994) ("[T]he policy reasons for the development of statutes of limitations [are] to ensure fairness to the defendant by preventing undue delay in bringing suits on claims, and by preserving evidence so that facts are not obscured by the lapse of time or the defective memory or death of a witness.").  Obviously, Tennessee and New Jersey differ, in the context of a malpractice action, as to the precise length of time that achieves compensation and deterrence, and avoids the litigation of stale claims.  See Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64 (1975) ("[T]he length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of

protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones."). But Tennessee's judgment as to how long attorneys should be exposed to liability for their alleged malpractice is on an equal footing with New Jersey's. See Fu, 733 A.2d at 1141 ("Rules . . . that deny liability are entitled to equal consideration in choice-of-law determinations as are rules imposing liability.").

Finally, it is noteworthy that New Jersey has a policy against forum shopping in cases in which it has little or no interest. See Gantes, 679 A.2d at 113 (citing Henry, 508 F.2d at 35) ("[T]he policy against forum shopping is intended to ensure that New Jersey courts are not burdened with cases that have only 'slender ties' to New Jersey."). Indeed, this is the policy behind the Heavner rule. See Warriner II, 475 F.3d at 500 n.2.

### 2. Relevant Contacts and their Relationship to the Policies of Each State

Having identified each states' policies, the Court must next consider "'whether those concerns will be furthered by applying that law to the multi-state situation.'" Fu, 733 A.2d at 1140 (quoting Pfizer, Inc. v. Employers Ins. of Wausau, 712 A.2d 634, 640 (N.J. 1998)). Factors enumerated in § 6 of the Restatement (Second) of Conflicts of Law (1971) ("the Restatement") guide New Jersey courts in applying the governmental interest test in tort cases. Warriner II, 475 F.3d at 500. These considerations include: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. Id. The most important of these considerations is the competing

21

interest of the states.  Id.  This requires a court to consider "whether application of a competing state's law under the circumstances of the case 'will advance the policies that the law was intended to promote.'"  Fu, 733 A.2d at 1142 (quoting Pfizer, 712 A.2d at 639).  In other words, "[i]f a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply.  Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply."  Veazey, 510 A.2d at 1189-90 (internal citations omitted).

In evaluating contacts in the choice of law context, the New Jersey Supreme Court has adopted the approach taken by the Restatement.  Warriner II, 475 F.3d at 502 (citing Fu, 733 A.2d at 1152).  Section 145(2) of the Restatement identifies the contacts that are most relevant to the governmental interest analysis in tort cases: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered.  Id.

An evaluation of the relevant contacts, and the policies they implicate, reveals that Tennessee has the most significant relationship to this case.  The injury to Plaintiffs, dismissal of the Tennessee Litigation and imposition of sanctions, occurred in Tennessee. See Foulke v. Dugan, 187 F. Supp. 2d 253, 257 (E.D. Pa. 2002) (stating, in a legal malpractice case, that the injury of being procedurally barred from pursuing an underlying personal injury claim in Pennsylvania's state courts occurred in Pennsylvania).  This is

significant because Tennessee has an interest in compensating victims for injuries resulting from legal malpractice and provides a cause of action for such injuries.  See, e.g., Sanjines v. Ortwein & Assocs., P.C., 984 S.W.2d 907, 910 (Tenn. 1998).  This compensation interest is amplified where the injury caused by the malpractice occurred in Tennessee.  See David B. Lilly Co., Inc. v. Fisher, 18 F.3d 1112, 1119 (3d Cir. 1994) ("'[A] state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there.'" (quoting the Restatement, § 145 cmt. d)).

The next contact is one on which Plaintiffs place particular emphasis–the place where the injury-causing conduct occurred.  Plaintiffs argue that Braverman's alleged malpractice is not limited to his prosecution of the Tennessee Litigation, but also extends to advice he gave them in multiple states, including New Jersey.  As a result, they argue New Jersey has a strong interest in applying its law, at least with respect to their claims concerning Braverman's advice.  The Third Circuit's decision in Lilly Co. is instructive in considering this argument.

Lilly Co. arose when a private investment firm acquired a Delaware corporation whose business relied on it maintaining a "small business" status.  Id. at 1114.  Unfortunately, the acquirer's attorneys structured the transaction in such a way that the acquiree lost that status.  See id. at 1116.  One of the defendants, a New York law firm, argued that New York, rather than Delaware, law governed the resulting malpractice

23

action.  Id. at 1118.  To this end, it asserted that its advice was "sought and rendered"
from its New York office.  Id. at 1120.  Additionally, the record revealed that some legal
work had also been performed in Washington, D.C. and Missouri.  Id.  For these reasons,
the Third Circuit acknowledged that the alleged negligence was committed by attorneys
whose "legal services originated in other states."  Id.  Nonetheless, the court held, "[a]s a
practical matter," that the attorneys' legal services were rendered in Delaware.  Id.

  This case is like Lilly Co.  The injury here was the dismissal of the Tennessee
Litigation and the imposition of sanctions.  While Braverman may have done some work–
including giving advice–in New Jersey, the allegedly negligent conduct that caused
Plaintiffs' injury must, as a practical matter, be deemed to have occurred in Tennessee.
As a result, Tennessee has a deterrence interest in seeing its tort law govern this case.  See
Schum, 578 F.2d at 501 (noting that the tort law policy of deterrence "is generally
associated with the sovereignty *in which past misconduct took place* and in which future
misconduct may recur.") (emphasis added).

  The next set of contacts to be evaluated is the parties' domicile, place of business,
and the like.  Braverman is a Pennsylvania domiciliary.  The various business entities
with which he is associated– B&K, BDK, and BK&C–are all Pennsylvania corporations
or limited liability companies.  But no one asserts, and the Court highly doubts, that
Pennsylvania has a significant interest in this case.  See Heavner, 305 A.2d at 414 n.3
(explaining that New Jersey did not have an interest where its only connection with the

parties and the dispute was that the defendant was a New Jersey corporation).

Plaintiffs make a great deal of the fact that Braverman is admitted to practice in New Jersey; they suggest that the New Jersey Supreme Court's power over members of its bar gives the state a significant interest in this case.  A state certainly has "an obvious interest in regulating the conduct of its own licensed professionals," but "this interest is not dispositive."  Lilly Co., 18 F.3d at 1120.  Braverman was admitted *pro hac vice* in Tennessee in order to prosecute the Tennessee Litigation.  (See Braverman's Br. Supporting Dismissal, Exh. A.)  Tennessee has an interest in regulating an attorney's conduct within its borders and this outweighs New Jersey's interest in regulating a New Jersey lawyer whose alleged malpractice occurs elsewhere.  See Crossland Sav. FSB v. Rockwood Ins. Co., 692 F. Supp. 1510, 1512 (S.D.N.Y. 1988) (concluding that New York's interest in regulating a Texas lawyer's conduct occurring within its borders outweighed Texas's interest in regulating its licensed professional), *cited in* Lilly Co., 18 F.3d at 1120 n.5.

Plaintiffs assert that Martin is a New Jersey resident, presumably because "New Jersey courts have long recognized a significant public interest in compensating their injured domiciliaries."  Dent v. Cunningham, 786 F.2d 173, 176 (3d Cir. 1986).  However, public records clearly demonstrate that Martin is a Florida, not New Jersey, domiciliary.  See, supra, note 8.  This is important because New Jersey's tort law has no interest in compensating a foreign plaintiff.  See Henry, 508 F.2d at 33.  The parties agree

that Catherine is a New Jersey domiciliary, which implicates New Jersey's compensation interest.  But Catherine's financial stake in New Midland and, by extension, her interest in this action is minuscule.  See, supra, note 2.  This ostensibly reduces the impact of New Jersey's interest in compensating her.  Moreover, any compensation interest New Jersey does have "is greatly attenuated in this case because New Jersey has no connection to the acts giving rise to this lawsuit."  Warriner v. Stanton (Warriner I), Civil Action No. 03-2211 (JBS), 2005 U.S. Dist. LEXIS 11465, at *14 (D.N.J. June 14, 2005).

Lastly, the Court considers the place where the parties' relationship was centered. According to the Complaint, Braverman was retained "for the purpose of filing a lawsuit . . . in the Circuit Court of Blount County, Tennessee . . . ."  (Compl. 1/1.)  In other words, the purpose of the relationship was to prosecute the Tennessee Litigation, which leads to the conclusion that the parties' relationship was centered in Tennessee.  See Lilly Co., 18 F.3d at 1120 (noting the "relational strands between the parties . . . span several states," but nonetheless holding that an attorney-client relationship was centered in Delaware where the "purpose of the relationship" was to facilitate the client's acquisition of a Delaware corporation).  This further demonstrates Tennessee's substantial connection to this litigation and again implicates that state's interests in compensation and deterrence with respect to legal malpractice that occurs within its borders.

Tennessee's contacts with this case take on even greater significance because they were not fortuitous, but rather were intentionally initiated by Plaintiffs.  They decided to

form New Midland, a Tennessee partnership.  They decided to conduct business in Tennessee under New Midland's name.  And they decided to hire Braverman for the purpose of prosecuting the Tennessee Litigation in Tennessee.  See Warriner II, 475 F.3d at 503-04 (observing that a state's contacts with litigation are especially relevant when they are not fortuitous).  Additionally, while Catherine is a citizen of New Jersey, it must be remembered that "'citizens do not . . . carry their home state's laws with them wherever they go.'"  Id. at 504 (quoting Amoroso v. Burdette Tomlin Mem'l Hosp., 901 F. Supp. 900, 906 (D.N.J. 1995)).

New Jersey has only slender ties to this case, which triggers its policy against forum shopping.  See Gantes, 679 A.2d at 113 (citing Henry, 508 F.2d at 35).  By contrast, Tennessee has a substantial interest in this case.  As a result, Tennessee law governs.  Under this law, Plaintiffs' legal malpractice claim is stale.  Accordingly, this suit is time-barred and therefore dismissed.

b.  The Complaint fails to sufficiently state a claim for legal malpractice.

In addition to being time-barred, this action must be dismissed because the Complaint fails to adequately state a claim for legal malpractice.  Instead, it merely recites the elements of such a claim, which is impermissible under Supreme Court precedent.

Once a case is removed to federal court, its pleadings are governed by the Federal Rules of Civil Procedure.  See FED. R. CIV. P. 81(c)(1).  Rule 8 of the Federal Rules requires a complaint to contain "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  FED. R. CIV. P. 8(a)(2).  This statement does not require

"detailed factual allegations."  Twombly, 127 S. Ct. at 1964.  But some factual allegations

are required in order to give the defendant fair notice of the claims against him.  See id. at

1964-65 & n.3.  A complaint must contain enough factual specificity "to raise a right to

relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  Id. at 1965.   Significantly, the Supreme

Court has held that Rule 8 is not satisfied where the complaint contains mere "labels and

conclusions," or "a formulaic recitation of the elements of a cause of action . . . ."  Id. at

1964-65 (citations omitted).

To state a claim for legal malpractice, under either New Jersey or Tennessee law, a

plaintiff must sufficiently allege the following basic elements: (1) a duty owed to the

plaintiff; (2) a breach of that duty by the attorney; (3) an injury to the plaintiff; and (4) a

factual and proximate link between the attorney's breach and the plaintiff's injury.  See

McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001); Gibson, 58 S.W.3d at 108.  In this

case, Plaintiffs allege that Braverman

> did breach his duty to the plaintiffs and was in fact negligent,
> careless and reckless in his representation, and failed to utilize
> that standard of care imposed by law when attending to the legal
> needs and requirements of his clients.   Defendant failed to
> exercise that degree of knowledge and skill ordinarily possessed
> and used by other similarly situated attorneys in the practice of
> law and in the prosecution of the plaintiffs' claims in the
> aforenoted lawsuit.   The defendant's multiple acts of
> carelessness and negligence, directly and proximately caused the
> plaintiffs' lawsuit to be dismissed, the loss of any and all claims

> and entitlements to relief by the plaintiffs and further caused the imposition of sanctions and penalties imposed against the plaintiffs.

(Compl. 1/6.)  Plaintiffs further allege that

> Defendant . . . and his firm breached each and every duty of care due and owing the plaintiffs by failing to undertake those necessary and appropriate actions which any reasonable and competent attorney would employ under the same and similar circumstances.

(Id. 2/3.)

These paragraphs constitute the only allegations speaking to Braverman's alleged breach of his duty to Plaintiffs.  It is evident from their face, however, that they are precisely the kind of "formulaic recitation[s]" the Supreme Court criticized in Twombly.  The Complaint provides no factual context whatsoever with respect to Braverman's alleged breach.  It does not identify, even generally, the nature of the breach.  Was it a negligent action Braverman took on Plaintiffs' behalf or was it a failure to act?  What were the circumstances of these actions or omissions?  When, even generally, did these breaches occur?  Factual allegations speaking to these questions are essential, particularly because the Tennessee Litigation took place over a course of many years.  As the Complaint currently stands, Braverman must speculate as to what specific conduct or decision constitutes an alleged breach of his duty of care.  Plaintiffs therefore did not give him the notice required by Rule 8.

Plaintiffs note that, because this is a malpractice action, New Jersey law requires

29

them to submit an affidavit of merit within sixty days after Braverman answers the

Complaint.  See N.J. STAT. ANN. § 2A:53A-27.  They contend this affidavit will provide

Braverman with adequate notice of the claims against him, thereby satisfying their

pleading obligations.  This argument is completely without merit.  According to the Third

Circuit,

> [t]he affidavit of merit statute has no effect on what is
> included in the pleadings of a case or the specificity thereof.
> The affidavit is not a pleading, is not filed until after the
> pleadings are closed, and does not contain a statement of the
> factual basis for the claim.  Its purpose is not to give notice of
> the plaintiff's claim, but rather to assure that malpractice
> claims for which there is no expert support will be terminated
> at an early stage in the proceedings.

Chamberlain v. Giampapa, 210 F.3d 154, 160 (3d Cir. 2000).  Similarly, this Court has

previously observed that

> [t]he affidavit need not contain any facts or evidence; it need
> only contain a statement of opinion regarding the facts already
> contained in the complaint.  The affidavit thus does not serve to
> place the defendant on notice of any aspect of the claim not
> already contained in the complaint and does not aver anything
> of consequence to the litigation.

RTC Mortgage Trust 1994 N-1 v. Fidelity Nat'l Title Ins. Co., 981 F. Supp. 334, 343-44

(D.N.J. 1997).  Thus, the Complaint's pleading defects cannot be remedied through the

submission of an affidavit of merit.

Plaintiffs alternatively argue that they could correct the Complaint's defects by

filing a more definite statement, but this contention is unavailing.  Federal Rule 12(e)

30

permits a party to move for a more definite statement "if a pleading . . . is so vague or ambiguous that [the] party cannot reasonably be required to frame a responsive pleading . . . ." FED. R. CIV. P. 12(e).  The plain language of this Rule contemplates that it is the responding party who may move for a more definite statement, not the party who drafted the defective pleading.  Plaintiffs cite no authority to the contrary.

When a complaint fails to state a viable claim, a district court must grant the plaintiff leave to amend unless doing so would be futile.  Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).  An amendment is considered futile if an amended complaint would itself fail to withstand a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1434.  Ordinarily, leave would be granted in a case like this because Plaintiffs presumably could plead some facts indicative of Braverman's alleged breach.  As discussed in part II.B.2.a., supra, however, Plaintiffs' legal malpractice claim is time-barred under the applicable statute of limitations.  Permitting Plaintiffs to amend their defective pleadings would be futile because the case would still be dismissed on this basis.  Accordingly, Braverman's motion to dismiss this action is granted, and leave to amend the Complaint is denied.

## III.  CONCLUSION

Braverman has successfully demonstrated that he should be permitted to amend his Notice of Removal.  Plaintiffs, on the other hand, have failed to show that remand is appropriate in this case.  Furthermore, the Court agrees with Braverman's contention that

Tennessee's statute of limitations governs and time-bars this action, and that, in any event, the Complaint fails to sufficiently state a claim for relief.  Accordingly,

IT IS THIS 12th day of August, 2008 hereby

ORDERED that Braverman's motion to amend and correct his notice of removal [6] is GRANTED; and it is further

ORDERED that Plaintiff's motion to remand this action to the New Jersey Superior Court [8] is DENIED; and it is further

ORDERED that Braverman's motion to dismiss this action [19] is GRANTED.


   /s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge